WINDSOR,
February,
1835.

JOSEPH A. GALLUP *vs.* JAIRUS JOSSELYN.

If A agrees to build a barn for B, by a stipulated time, and to take the timber on the land of B—*Held*, That the property of the timber cut and drawn for the purposes of finishing the barn, did not belong to A, so as to be taken in execution for his debts.

This was an action of trespass, for taking and carrying away a certain quantity of boards and timber.

It was admitted by the defendant that he took the property, as charged in the plaintiff's declaration.

The defendant then offered in evidence two certain writs of attachment, which were read to the jury, without objection; by virtue of which, as deputy sheriff, he took said lumber as the property of one Dan Shipley, which writs are here referred to.

The defendant then introduced evidence tending to show, that some time previous to the attachment, the plaintiff, with said Shipley, had entered into, a written contract, by which the said Shipley was to build a barn upon the land of the plaintiff, with permission to use the timber upon the land of the plaintiff sufficient for that purpose; and further tending to show, that the boards and timber in question were made from timber cut and taken by said Shipley from plaintiff's land, in pursuance of said written contract;—that said Shipley went on, at his own expense, except using plaintiff's oxen as mentioned in said contract, and cut said timber—drew it to the mill—hired it sawed, and drew it from the mill on to the land of said plaintiff, at the place where it was attached by the said defendant;—that said Shipley had framed and raised said barn, and had partly completed the same, and with his hands was at work in finishing said barn at the time the property was attached;—that the timber and boards at the time of the attachment, were lying within twenty feet of said barn, for the purpose of being put on to said barn;—that the plaintiff was advising in relation to the building of said barn up to the time of the attachment, which was four or five days after the time set in said contract for completing said barn; and further, that the farm including the land upon which the said timber was lying at the time of the attachment, was occupied by Leonard Harlow, under a written lease, made a part of this case;—that at the time of taking the lease referred to, the saib Harlow had agreed with and been directed by the plaintiff not to molest or hinder said Shipley in the building of said barn. And further tending to show, that when said boards and timber were attached by said Josselyn, he moved them about five or six rods into the

highway; and that soon after, the plaintiff took back the said boards and timber, and moved the same to or near the place from which the same were removed by said Josselyn when he attached the same; and that said Gallup having so taken back said boards and timber, put them on to his said barn. And there was no evidence tending to prove any possession of said boards and timber in the plaintiff, otherwise than as herein before stated.

The defendant's counsel requested the court to instruct the jury that if they believed the foregoing facts, which the evidence tended to prove, the defendant was entitled to a verdict. But the court did not so instruct the jury; but did instruct them to the contrary of this, upon both points: And the jury returned a verdict for the plaintiff. To which decisions of said court in their charge, and refusing to charge, the defendant excepted; and his exceptions were allowed and certified.

*Mr. Hutchinson and Mr. Chandler for defendant.*—1. The plaintiff had no title in the timber at the time of the attachment. The title was wholly in Shipley, who was to build the barn by the job, and who had, by plaintiff's consent, changed the property from growing trees, to timber and boards. The permission to Shipley to get the timber, was a part consideration of the contract.—11 Wendell, 135, *Johnson* vs. *Hunt.*

2. If plaintiff had any interest in the property, he cannot maintain trespass, as he had neither the possession or right of immediate exclusive possession, but had parted with it to Shipley.—2 Pick. Rep. 122, *Walch* vs. *Pomroy.* 5 Vt. Rep. 100, *Brainard* vs. *Burton*—same, 278, *Soper* vs. *Sumner*—same, 331, *Hart* vs. *Hyde.*

3. If it should be said that Shipley's time for completing the job had expired, and therefore his right of possession ceased, it is answered, the plaintiff waived that right by continuing to advise and direct about the work.—5 Vt. Rep. 278, (above cited )

*Asa Aiken, contra.*—1. The contract referred to in the exceptions, is a contract for *labor*, with the finding of certain materials, not the product of the farm, with the right to use, for *that specific purpose*, the timber of the plaintiff, which he had on the farm.

2. Shipley, by the terms of the contract, acquired no right in the timber on the farm, to use it for any other purpose. If he had cut and sold it, he would have been liable *for the timber* to the plaintiff. The plaintiff's remedy for *such* a use or conversion by

Shipley, would not have been upon the contract, but by an action *counting upon the tort.*

There was, therefore, no *sale* of the timber to Shipley. There being no sale, the timber was not Shipley's, and consequently not liable for *his* debts.

3. The *state of the materials* furnished by the plaintiff for the construction of this barn of his, cannot vary the case.

If the agreement had been to construct this barn out of timber of the plaintiff, already manufactured into beams and plank and boards, no one can pretend that an agreement to fashion them into a barn would change the property—no more can it do so, if the agreement be to build it from the raw material.

4. If Shipley cut off the timber for any *other purpose* than building the barn, he is a *trespasser ;* and trespass does not change the right of property.

If he cut it for *this* purpose, he is protected in its use for this purpose, *by the licence* contained in the contract for building.

The opinion of the court was delivered by

Williams, Ch. J.—This is an action of trespass, for a quantity of boards and timber, taken as the property of Dan Shipley. It appears that a contract was made between Shipley and plaintiff, upon the construction of which depends the rights of the parties to this suit. In the first place, Shipley was to build a barn at all events, by a time therein limited. Gallup was to find timber. There was no sale to him—no transfer of property ; and he had no right to use timber for any other purpose. If he thought proper to procure it elsewhere, no right is given him to take an equivalent from Gallup's land, or in short, for any other purpose than building the barn ; for such are the express words of the contract. It may be very questionable whether, if Gallup had sold the land whereon the timber grew, it would not have so far rescinded the contract, as that Shipley would have been under no obligation to fulfil. At all events, Gallup would have been liable for all damages, and if Shipley had procured the timber elsewhere, Gallup would have been under obligation to pay for the same. If the timber, either before or after it was sawed, had been burnt up, without fault as was supposed in argument, it would have been so far Gallup's loss, as that Shipley might for the same purpose had procured more from the same lot.

Such being our views of the nature of the contract, it follows that the timber, when cut from the stump, was the property of Gallup. It could not thereafter become the property of Shipley, by

Windsor,
February,
1835.
Gallup
vs.
Josselyn.

the labor bestowed on it, in manufacturing it for the use intended. So long as it could be traced and identified, it still remained his.— For at no period previous to the taking, do we find any act of the plaintiff manifesting his intention to part with the property. The case from Johnson, of the owner of timber being allowed to recóv- er for the property when manufactured into shingles, is a very strong case to show that the owner is not divested of his ownership by any alterations the property may undergo, so long as it can be identi- fied. It is true, in that case, the property, i. e. trees, from which shingles were manufactured, was taken without the consent of the owner. But I apprehend the principle on wich the decision was founded, is applicable to this case. If the owner of timber-trees is permitted to retain his ownership when it is thus manufactured into boards or shingles, when it is taken for that purpose, without his consent, it is difficult to see why he should be divested of his own- ership, when taken with his consent, to be manufactured for his use. Upon the construction of this contract, and from the nature of the case, we are of opinion, that the property of the boards and timber, for the taking of which this action is brought, was in the plaintiff.

The next question is, whether he had such a possession as to enable him to bring this action. The general principle is, that the ownership of personal property carries with it possession. The owner is constructively in possession. Where he parts with pos- session and use for a definite time, he cannot maintain trespass against any one who takes it during that time. Such was the doc- trine laid down in the cases cited. Here was no parting with pos- session: the property all the while remained in the plaintiff. The possession of Shipley was that of an agent to manufacture for the plaintiff's use ; and he had no other possession than he had of the team for drawing the same : Nothing more than every hired man or agent has, of property entrusted to him, to use in the business of, and for the benefit of the owner. If Shipley had converted it to any other use, he would have been immediately liable ; and if any one took it from Shipley, while in the employ of the plaintiff in completing the job, such person would be immediately answerable to the plaintiff ; and it would be a direct injury to the property of the plaintiff, in the hands of his agent, and of course an injury to the possession, for which the action of-trespass is the appropriate rem- edy. The evidence introduced, directly tended to prove the plain- tiff's cause of action, and the defendant was not entitled to the charge requested.

Judgment of county court is therefore affirmed.